*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRANDAN ROBERT SIMON,

      Plaintiff-Appellant,

v

JESSICA LOURAINE SIMON, also known as
JESSICA JOHNSON,

      Defendant-Appellee.

UNPUBLISHED
December 17, 2024
11:36 AM

No. 371011
Ionia Circuit Court
LC No. 2011-028927-DM

Before: GARRETT, P.J., and RICK and MARIANI, JJ.

PER CURIAM.

Plaintiff-father appeals as of right the trial court's order following de novo review of a custody and parenting time recommendation made by a Friend of the Court referee. Father elected neither to show nor participate in the hearing conducted by the trial court. The referee recommended that (1) the parties should evenly split parenting time with their son on a week-on/week-off basis; and (2) defendant-mother should retain sole physical and legal custody of the parties' daughters. The referee also recommended that father have two hours of parenting time with the girls on alternate Fridays and that father attend counseling to mend his relationship with the girls. The trial court ordered father to attend counseling, ordered mother to ensure that the daughters participated in the counseling, and ordered the counseling agency to provide progress reports. In all other respects, the trial court affirmed the referee's recommendation and order. We affirm in part, reverse in part, and remand.

## I. FACTUAL BACKGROUND

The parties were married in 2009 and divorced in 2012. A consent judgment of divorce awarded the parties joint physical and legal custody of their three children. In 2018, after father pleaded no contest to criminal charges and was sentenced to 3 to 15 years in prison, mother moved for sole physical and legal custody of the children. The parties eventually agreed that mother would have sole physical and legal custody on a temporary basis and that father would have parenting time as mutually agreed. In February 2020, mother moved to change her temporary sole custody into a "continuing order of the Court/ Final Order." After an evidentiary hearing, at which

-1-

father appeared virtually, the motion was granted. Father was released from prison in May 2021 and successfully completed parole in May 2023.

In November 2023, father moved the trial court to award him joint legal custody of the children and to modify the governing custody order. Father proposed having parenting time with the three children on alternating weekends; "splitting custody" during the week, with mother having custody of their daughters and father having custody of their son; and sharing parenting time on holidays and birthdays. Mother opposed both motions. As to father's motion for joint legal custody, mother denied that the parties had been able to cooperate and claimed that they generally agreed regarding major decisions affecting the children's welfare. Regarding parenting time, mother acknowledged that she agreed to father's week-on/week-off parenting time with their son for the past five months, but she observed that father's proposed parenting-time schedule would effectively change custody with respect to the child. She also observed that the girls were "very opposed" to father's parenting-time proposals. Mother suggested that the parties continue to do what they had been doing since father's release from prison. That is, the parties would have week-on/week-off parenting time with their son, and father's parenting time with the girls would remain flexible and on terms that were agreeable to the girls.

Following an evidentiary hearing before a Friend of the Court referee, the referee recommended the custody, parenting time, and counseling identified earlier. Father objected to the recommendation and demanded a de novo hearing before the trial court. Neither party offered additional evidence at the de novo hearing. Father's counsel argued that it was the trial court's "job" to promote a strong bond between him and his daughters and that the issue of how to enforce a parenting-time order arose only after the court issued a meaningful parenting-time order, i.e., one with overnight, weekend parenting time. He further argued that the referee failed to analyze the parenting-time factors and that the referee's analysis of the best-interest factors was flawed because it analyzed which home was better rather than which parenting-time plan was better. Finally, father's counsel argued that the referee failed to explain on the record her decision regarding father's request for joint legal custody. He urged the trial court to order meaningful parenting time and then hold mother accountable for the girls' compliance.

Mother countered that she had consistently attempted to encourage a relationship between the girls and father. She argued that parenting time of a frequency, duration, and type reasonably calculated to promote a strong bond did not necessarily mean more parenting time or overnight parenting time, pointing out that ordering more parenting time would not suddenly make the girls do something to which they were adamantly opposed. Mother asserted that father would obtain the outcome he sought if he would embrace the referee's recommendation, arrange for therapy, and involve himself in the girls' lives.

Ruling from the bench, the trial court stated that it was not convinced that its task was simply to select which parent's parenting-time proposal was superior, "particularly because maybe the two plans are both equally awful." The court agreed with the referee that the son had an established custodial environment with both parents, but the girls had established custodial environments with mother only. After summarizing the law regarding the children's rights to parenting time and the statutory considerations for determining an award of parenting time, the trial court made independent findings regarding the best-interest factors in MCL 722.23. Because the parties agreed on the referee's recommendations for their son, the trial court looked at the

-2-

factors primarily as they pertained to the parties and the girls. Largely agreeing with the referee's best-interest findings, the court concluded that the best-interest factors overwhelmingly favored mother. As to Factor (*i*) (children's preference), the trial court observed that the referee considered the children's preferences, but that the court had not interviewed the children and had not been asked to do so by the parties for purposes of the de novo review and hearing. On the basis of its analysis, the trial court found that father had not met his burden to prove by clear and convincing evidence that "joint custody" was in the girls' best interests at present.

The trial court agreed that father was entitled to meaningful parenting time, but the court noted that it had to consider the daughters' best interests, not what father wanted. The trial court affirmed the referee's recommendation that mother retain physical and legal custody of the girls and that father have parenting time on alternate Fridays from 5:00 p.m. until 7:00 p.m., as well as at other times as agreed. The court also agreed with father that a more active approach to improving his relationship with his daughters was required and that two hours of parenting time every other week would not necessarily move matters forward. Therefore, the court required father to attend family counseling and required mother to make the daughters available for counseling as the agency required. The court further stated that it wanted the counselor "to provide updates and recommendations for expanding parenting time." The court stated that it "would like the professional's opinion on how that's going and when they think it's reasonable and appropriate for this Court to amend the order" to expand parenting time. This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

The Child Custody Act of 1970, MCL 722.21 *et seq.*, governs the resolution of most custody disputes in Michigan. See *Mauro v Mauro*, 196 Mich App 1, 4; 492 NW2d 758 (1992). The purpose of the Act is to promote the best interests and welfare of children, and courts must construe it liberally to serve that purpose. See MCL 722.26(1). We affirm on appeal all orders and judgments of the circuit court pertaining to a child custody dispute "unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. See also *Brown v Brown*, 332 Mich App 1, 8; 955 NW2d 515 (2020).

A trial court's finding is against the great weight of the evidence if "the verdict is so contrary to the great weight of the evidence as to disclose an unwarranted finding, or [if] the verdict is so plainly a miscarriage of justice as to call for a new trial . . . ." *Fletcher v Fletcher*, 447 Mich 871, 878; 526 NW2d 889 (1994) (quotation marks and citation omitted). A palpable abuse of discretion exists "when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). "Clear legal error occurs when the trial court incorrectly chooses, interprets, or applies the law." *Brown*, 332 Mich App at 8 (quotation marks and citation omitted). We review de novo the trial court's application of the law to the facts, see *Kaeb v Kaeb*, 309 Mich App 556, 564; 873 NW2d 319 (2015), and we defer "to the trial court's factual judgments and [give] special deference to the trial court's credibility assessments," *Brown*, 332 Mich App at 9.

We review unpreserved issues in child custody cases under the plain-error standard. *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368002); slip op at 7. To prevail under the plain-error standard requires showing that an error occurred; that the error was plain, i.e., clear or obvious; and that the error affected substantial rights. Once this showing is made, we "must exercise [our] discretion in deciding whether to reverse." *Id.* (quotation marks and citation omitted). "Reversal is warranted when the plain, forfeited error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation marks and citation omitted). "If a trial court improperly adjudicates a child-custody dispute, and the impropriety is not harmless, the appropriate remedy is remand for reevaluation or for a new child-custody hearing." *Id.* at ___; slip op at 4.

## B.  JOINT LEGAL CUSTODY

Father contends that the trial court clearly erred by denying his request for joint legal custody of his daughters without addressing whether the parties could cooperate and generally agree about important decisions affecting the girls, see MCL 722.26a(1)(b). We agree.

"At the request of either parent, the court shall consider an award of joint custody, and shall state on the record the reasons for granting or denying a request." MCL 722.26a(1). "Joint custody" may refer to joint physical custody, or joint legal custody, or both. See MCL 722.26a(7). Joint physical custody refers to when a child resides "alternately for specific periods with each of the parents," and joint legal custody refers to when "the parents share decision-making authority as to the important decisions affecting the welfare of the child." MCL 722.26a(7)(a) and (b). To determine whether joint custody is in the best interests of a child, the trial court "shall" consider the best-interest factors in MCL 722.23 and "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1).

The trial court stated that its analysis of the best-interest factors in MCL 722.23 weighed against granting father joint legal custody of the girls. However, neither the referee nor the trial court considered "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1)(b). When determining legal custody, the failure to consider the parties' level of cooperation constitutes clear legal error that requires remand. See *Molloy v Molloy*, 243 Mich App 595, 607; 628 NW2d 587 (2000), vacated in part on other grounds 466 Mich 852 (2002). Mother urges us to affirm the trial court's ruling regarding legal custody because the trial court reached its decision after a detailed analysis of the best-interest factors in MCL 722.23. However, our Legislature was clear that, when determining joint custody, a trial court must consider both the best-interest factors and the parties' level of cooperation and agreement regarding major decisions affecting a child's welfare. MCL 722.26a(1). The trial court did not refer to this standard in its ruling from the bench or in its order following the de novo hearing.

Given the foregoing, we conclude that the trial court in the present case committed clear legal error by failing to choose and apply the correct law. Accordingly, we reverse that portion of the order granting mother sole legal custody of the parties' daughters and remand the matter to the trial court for the limited purpose of assessing the parties' level of cooperation and agreement, as

-4-

it must in determining whether father would be able to share joint legal custody of his daughters with mother.

## C. PARENTING TIME

Father raises several challenges to the trial court's parenting-time decision. Father contends that the trial court clearly erred (1) by requiring him to show by clear and convincing evidence that a modification of parenting time was in the girls' best interests; (2) by not considering the parenting-time factors in MCL 722.27a(7); and (3) by not analyzing the best-interest factors in MCL 722.23 with an eye toward determining which parent's proposed parenting-time schedule was in the best interests of their daughters. Father further contends that the trial court abused its discretion by failing to award him an amount of parenting time reasonably calculated to promote a strong bond between him and the girls. Father's arguments are unavailing.

The party seeking to modify parenting time must first establish proper cause or a change in circumstances. MCL 722.27(1)(c). Once proper cause or a change in circumstances is shown, the court must then determine whether, and with whom, the child has an established custodial environment. Whether the proposed parenting-time modification changes an established custodial environment determines the standard of proof for evaluating a child's best interests. If the proposed modification changes the child's established custodial environment, then the moving party must show by clear and convincing evidence that the modification is in the child's best interests. MCL 722.27(1)(c); *Pierron v Pierron*, 486 Mich 81, 92; 782 NW2d 480 (2010). If the proposed modification does not change the established custodial environment, then the moving party need only show by a preponderance of the evidence that the change is in the child's best interests. *Pierron*, 486 Mich at 93.

Not all changes in parenting time will automatically constitute a change in custody. "When determining whether a proposed change to parenting time would alter an established custodial environment, an important consideration is to what extent the proposed change will decrease a parent's time with the child." *Barretta v Zhitkov*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 364921 and 365078); slip op at 7. Although "minor modifications that leave a party's parenting time essentially intact do not change a child's established custodial environment, significant changes do." *Lieberman v Orr*, 319 Mich App 130, 89-90; 900 NW2d 130 (2017). In determining whether a proposed parenting-time change would modify a child's established custodial environment, "it is the child's standpoint, rather than that of the parents, that is controlling." *Pierron*, 486 Mich at 92.

In the present case, the parties do not dispute the existence of proper cause or a change in circumstances sufficient to revisit the governing custody order. Nor do they dispute that the girls have an established custodial environment with mother, but not with father. Father contends, however, that his proposed parenting-time schedule for the girls would not change "custody" and that the trial court thus erred by holding him to the higher "clear-and-convincing" standard of proof.

The governing custody order awarded father parenting time as mutually agreed. However, father's proposed parenting-time schedule for the girls would award him specific parenting time that included at least 52 overnights, not including shared parenting time on holidays and birthdays.

Obviously, mother's parenting time would decrease by the same amount. The referee found, and the trial court agreed, that father's parenting-time proposal would change the girls' established custodial environment with their mother. Father has not identified any evidence that weighs against the trial court's finding, let alone evidence that would render the trial court's finding unwarranted or so plainly a miscarriage of justice that it would warrant a new trial. See *Fletcher*, 447 Mich at 877-878. Even if the trial court's finding regarding the effect of father's proposed parenting-time modification was incorrect, the record does not suggest that the finding was unwarranted or an obvious miscarriage of justice. See *id*. Moreover, although the trial court found that father failed to meet his burden, the court nevertheless modified the governing custody order to award father parenting time. For these reasons, father is not entitled to relief on this issue.

Father's argument that the trial court clearly erred by not considering the parenting-time factors in MCL 722.27a(7) also lacks merit. Both the statutory best-interest factors listed in MCL 722.23, and the parenting-time factors listed in MCL 722.27a(7), are relevant to parenting-time decisions. *Shade v Wright*, 291 Mich App 17, 31-32; 805 NW2d 1 (2010). However, MCL 722.27a(7) states that a court *may* consider the parenting-time factors when "determining the frequency, duration, and type of parenting time." The term "may" generally designates discretion. *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008). Therefore, the trial court was not *required* to consider these factors. A court that does not address the parenting-time factors, but clearly considers a minor child's best interests when considering modifying parenting time, does not commit clear legal error. See *Shade*, 291 Mich App at 32.

Here, the trial court considered the children's best interests by analyzing the best-interest factors in MCL 722.23. Although father asserts that the trial court should have analyzed the parenting-time factors, he does not cite any authority requiring the court to do so, nor does he identify any parenting-time factor, the consideration of which would have weighed against the trial court's parenting-time decision. For these reasons, father has not shown that the trial court incorrectly chose, interpreted, or applied the law. See *Brown*, 332 Mich App at 8.

We turn next to father's contention that the trial court erred by failing to analyze the best-interest factors in MCL 722.23 with an eye toward which parenting-time plan was superior. Father provides no legal authority to support his assertion that the trial court was required to analyze the best-interest factors to determine which parenting-time plan was superior. See *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (holding that when "a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned"). In fact, father's proposed approach to the best-interest analysis conflicts with the goal of the Child Custody Act, which is "to promote the best interests the child and to provide a stable environment for children that is free of unwarranted custody changes." *Marik v Marik*, 325 Mich App 353, 360; 925 NW2d 885 (2018) (quotation marks and citation omitted). Accordingly, father's claim that the trial court's method of analyzing the best-interest factors constituted clear legal error must fail.

Father's assertion that the trial court's award of two hours of parenting time every other Friday did not provide parenting time in a frequency, duration, or type that was reasonably calculated to promote a strong parent-child bond between father and his daughters must likewise fail. MCL 722.27a(1) requires parenting time to be granted "in accordance with the best interests of the child." "It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents." MCL 722.27a(1). Unless certain exceptions apply,

a trial court is required to grant parenting time "in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time." MCL 722.27a(1).

Father requested parenting time with the girls from Thursday through Saturday every other week, including overnights. Mother asked that parenting-time arrangements remain as they were, i.e., as mutually agreed. Both parents agreed that more parenting time with father would strengthen the girls' relationship with him, but mother was opposed to forcing the girls to do something that they adamantly did not want to do. The trial court impliedly found that neither parent's proposed parenting-time schedule met the requirements of MCL 722.27a(1). On the basis of the testimonies at the evidentiary hearing, the court concluded that granting father parenting time in accordance with his proposed parenting-schedule had the potential to do more harm than good, while mother's proposed parenting-time schedule did not actively promote a strong relationship between father and the girls.

The parenting time ordered by the trial court arguably served the best interests of the girls and promoted a stronger relationship with father by requiring the girls to have regular parenting time with father, something that was new to them, while leaving them the option to have additional parenting time, including overnights. Further, the trial court's parenting-time order also required father to engage a qualified counselor to help him and the girls improve their relationships, required mother to ensure that the girls were available for counseling, and required the counselor to submit progress reports.

At one point during the evidentiary hearing, father testified that he did not want to force the girls to comply with a parenting-time order; rather, he wanted an order that the girls could transition toward. The trial court essentially gave father what he asked for: a flexible parenting-time order that gave him specific parenting time, even if not in the amount that he requested, and that allowed the girls and father to transition toward better relationships and more parenting time with the help of a qualified counselor. Given the facts of this case, it cannot be said that the trial court's parenting-time decision was so "palpably and grossly violative of fact and logic that it evidence[d] a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger*, 277 Mich App at 705.

D. THE CHILDREN'S PREFERENCES

Father next argues that the trial court's failure to obtain and consider the minor girls' preferences for purposes of the court's best-interest analysis constituted plain error affecting their substantial rights and, therefore, that reversal and remand for a new best-interest analysis is required. While we agree that the trial court erred by not obtaining and considering the girls' preferences, and that the error was obvious, given the facts of this case, we do not believe that the error affected the girls' substantial rights.

To support his argument, father relies on this Court's recent holding in *Quint*, ___ Mich App at ___; slip op at 8-9. In *Quint*, the defendant-mother appealed from a trial court's order continuing the parties' joint custody of their minor child, but changing the parties' joint legal custody to sole legal custody in the plaintiff-father's favor. The trial court explained on the record that the child's preference was not considered because the court did not know whether the child

was old enough to express a reasonable preference, and, even if he were old enough, neither party had asked the court to interview him. *Id*. at ___; slip op at 3. The defendant argued that the trial court erred by not considering the child's preference under MCL 722.23(*i*).

This Court determined that error occurred and that it was plain. This Court reasoned that the "Legislature requires a trial court to consider '[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express [a] preference[,]" and this Court has held that children as young as six years old are generally presumed to be able to express a reasonable preference. *Id*. at ___; slip op at 7 (alternations in original). The child in *Quint* was seven years old at the time of the hearing, and nothing in the record suggested that he was unable to express a reasonable preference. *Id*. The trial court erred, therefore, "by not considering the child's reasonable preference under MCL 722.23(*i*) or otherwise explaining why the child was unable to express a preference." *Id*. at ___; slip op at 8.

This Court also determined that the error affected the child's substantial rights by depriving him of "the right and opportunity to have his or her own voice heard in a child-custody proceeding." This Court observed that Michigan's "Legislature deemed this right/opportunity of sufficient worth to mandate its consideration in a trial court's best-interest analysis, and [that] our Court has similarly deemed it of sufficient worth to mandate its consideration by the trial court despite a parent's failure to raise it." *Id*. Further, "even if the child's preference does not carry the day, there is independent value in knowing on some level that one's voice has been heard." *Id*. For these reasons, this Court concluded that reversal was warranted because the trial court's failure to consider the child's preference under MCL 722.23(*i*) was plain error that "seriously affected the fairness and integrity of the custody proceedings." *Id*. This Court concluded that the remedy for the trial court's failure to consider the child's preference under MCL 722.23(*i*) was to vacate the trial court's order and remand for a new custody hearing, at which the trial court would "reanalyze the best-interest factors, using all up-to-date information brought to its attention." *Id*. at ___; slip op at 9 (quotation marks and citation omitted).

The trial court in the present case also committed obvious error by failing to consider the preferences of the parties' daughters on de novo review. When a de novo hearing on a referee's recommendations is properly requested, MCL 552.507(4) requires the trial court to "conduct a hearing as if no friend of the court hearing had been conducted previously and to arrive at an independent conclusion." *Marshall v Beal*, 158 Mich App 582, 591; 405 NW2d 101 (1986). A de novo hearing includes a "new decision" based "entirely on the record of a previous hearing, including any memoranda, recommendations, or proposed orders by the referee." MCL 552.507(6)(a). A new decision may also be based on evidence presented at the de novo hearing, or on a combination of the referee's record and new evidence presented at the hearing. MCL 552.507(6)(b) and (c).

As the parties did not submit any additional evidence at the de novo hearing, the trial court appears to have based its new decision on the record of the evidentiary hearing. The trial court made independent findings under the best-interest factors on the basis of the testimonies offered at the evidentiary hearing. When it came to Factor (*i*), the trial court observed that the children's preferences were "considered by the referee [and] factored in." We are not convinced that *Quint* applies here. The trial court in *Quint* changed the child's legal custody without hearing the child on the issue. In the present case, the voices of the parties' daughters were heard when the referee

-8-

interviewed them *in camera* and, according to the trial court, factored their preferences into her best-interest analysis and ultimate recommendation that legal custody of the girls remain unchanged. The trial court then affirmed this recommendation. Even though the trial court did not separately obtain and consider the girls' preferences, the referee did. The trial court spared these children the stress of returning to court to talk about their preferences to the judge – likely a total stranger to them. It is therefore not clear that the girls' substantial rights were affected. Stated differently, a child's substantial rights are more clearly affected when a trial court changes a custody arrangement without considering the child's preferences than in circumstances like those presented in the present case, when the children's voices were heard and custody arrangements remained as they had been for years. For these reasons, we conclude that under the facts of this case, if there was error, it did not affect the girls' substantial rights. Therefore, it is not necessary to vacate the trial court's order and remand for a new best-interest analysis.

## E. UNLAWFUL DELEGATION

Lastly, father contends that the final sentence of the trial court's order after the de novo hearing implied that a counselor's progress reports would be used to automatically expand parenting time, contrary to existing law, under which the trial court has sole discretion to expand parenting time after an evidentiary hearing. We disagree.

Father did not object to the trial court's order below; therefore, our review is for plain error affecting substantial rights. See *Quint*, ___ Mich App at ___; slip op at 7.

The trial court's order following the de novo hearing required father to arrange for and participate in therapy to help improve his relationships with his daughters. The court ended its order with the sentence: "The Professional Agency will provide updates to expand the Parenting Time for the Plaintiff." Father likens the trial court's order to an order discussed in *Ludwig v Ludwig*, 501 Mich 1075, 1075 (2018). There, the order expressly required the defendant-parent and minor children to undergo reunification therapy, and provided that the "frequency, duration, and method of continued contact [between the parent and the children following an initial video conference] will be at the therapists' discretion." *Id*. Our Supreme Court concluded that the circuit court should have held an evidentiary hearing and considered the best interests of the children before entering its reunification order. *Id*. It thereafter remanded the case for "a hearing to determine whether the reunification process authorized by the trial court [was] in the children's best interests." *Id*.

Father has not established plain error affecting substantial rights. Nothing in the order plainly indicates that the expansion of father's parenting time will occur automatically or outside of the regular procedures for modifying parenting time. Further, unlike the order in *Ludwig*, the order in the present case did not expressly give a future counselor the authority to decide any parenting-time matters. On the record, the trial court indicated that it wanted the counselor to provide updates and recommendations for the trial court to review when considering expansions of parenting time. The trial court did not indicate that it would be bound by, or even accept, the recommendations of the counselor. Thus, the court did not improperly delegate its authority to decide matters of parenting time or provide for automatic adjustments to parenting time outside of the normal procedures for modifying parenting time. In light of the foregoing, father has not established that the trial court plainly erred.

## III. CONCLUSION

For the foregoing reasons, we affirm in part, but reverse the trial court's affirmation of the referee's recommendation that mother have sole legal custody of the parties' daughters, and remand to allow the trial court to address joint legal custody and the parties' level of cooperation and agreement under MCL 722.26a(1)(b).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Philip P. Mariani