*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW HERMAN,

          Plaintiff-Appellant,

v

BETHANY HERMAN, also known as BETHANY MCCARTHY,

          Defendant-Appellee.

UNPUBLISHED
June 09, 2026
10:32 AM

No. 378133
Kent Circuit Court
LC No. 14-004547-DM

Before: CAMERON, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order denying his motion for joint legal custody, modification of parenting time, and appointment of a guardian ad litem (GAL). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The parties' marriage was dissolved by a consent judgment of divorce entered in 2015. Defendant was awarded sole physical and legal custody of the parties' two minor children, GH and RH. Plaintiff was initially awarded parenting time from Friday at 4:00 p.m. to Sunday at 4:00 p.m. on alternating weekends and from 6:00 p.m. to 9:00 p.m. on Wednesdays.

The custody arrangement remained essentially the same after the divorce, with parenting-time modifications in 2016, 2021, and 2023. The 2016 modification adjusted weekend and midweek exchange times and addressed holiday and summer parenting time. The 2021 modification eliminated plaintiff's Wednesday parenting time, granted defendant parenting time for the children's sporting tournaments, and required defendant to provide plaintiff makeup parenting time within two weeks if a tournament occurred during his parenting time. In 2023, plaintiff moved for joint legal custody, modification of parenting time, and appointment of a GAL. The parties stipulated that, in lieu of a custody or parenting-time review or GAL appointment, defendant would either provide plaintiff's e-mail to the children's coaches so that he could obtain sporting-event information, or she would post such information on the Our Family Wizard (OFW)

-1-

calendar.[1] The parties further stipulated that the children would call plaintiff on Wednesdays between 8:00 p.m. and 8:30 p.m., and if an event prevented calling, then defendant would post the children's availability on the OFW calendar. These stipulations were memorialized in an order dated April 4, 2023.

In 2025, plaintiff again moved for joint legal custody, modification of parenting time, and appointment of a GAL, repeating allegations from 2023 and adding three new claims. First, plaintiff alleged that defendant showed to the children plaintiff's social media post about the shooting of political activist Charlie Kirk in September 2025. Plaintiff deemed this action inappropriate and asserted that defendant intended to alienate the children from him. Second, plaintiff alleged that defendant violated the April 4, 2023 order by missing a midweek phone call in May 2025. Third, he alleged that defendant blocked him from being added as a family member to GameChanger, the sports app used by GH's coaches. Plaintiff asserted that these actions constituted proper cause or a change of circumstances to reevaluate legal custody; that the children lacked a parenting-time schedule sufficient in frequency, duration, and type to foster a strong bond with him; and that the current order no longer met the children's needs or adequately represented their best interests to the court. He requested (1) referral to the Friend of the Court (FOC) for investigation and recommendations regarding legal custody and parenting time, (2) appointment of a GAL to assess and recommend steps to safeguard the children's rights, and (3) appointment of a neutral therapist for the children.

Defendant responded that many of the motion's allegations had been raised in 2023 and resolved by the April 4, 2023 order. She denied showing plaintiff's Charlie Kirk post to the children, explaining that the children discussed the event at their Christian school and that she counseled them not to seek graphic content online. Defendant stated that plaintiff told GH during his parenting time, "I will Charlie Kirk you" and "Watch your neck." Defendant admitted violating the April 4, 2023 order when the children did not call plaintiff on Wednesday, May 7, 2025, but she believed that the FOC resolved the issue by informing her that she lacked authority to alter the court's phone-call order and by awarding plaintiff two additional phone calls during the year. Defendant denied that GameChanger was used for team communications; asserted that plaintiff could watch games, see schedules, and obtain other information for free (with an optional subscription upgrade in the app); and stated that plaintiff had access to the same information as other parents, except that he could not "RSVP for the children." Defendant opposed the appointment of a GAL or therapist, asserting that no objective third party had suggested that the children needed therapy and that nothing in plaintiff's motion showed that her actions negatively impacted the children, who were doing well at school, in sports, and socially. She further maintained that the children spent as much time with plaintiff as the court deemed in their best interests, and she asked the court to deny plaintiff's requested relief.

---

[1] "Our Family Wizard is an electronic messaging program that a trial court may order parties to use to communicate regarding custody and parenting-time matters when other methods of communication have proved contentious or ineffective." *Kuebler v Kuebler*, 346 Mich App 633, 650 n 6; 13 NW3d 339 (2023).

During a hearing on the motion, plaintiff acknowledged that his motion repeated many allegations from 2023, describing them as "relatively very minor issues" that did not need individual discussion but "maybe show[ed] a longer pattern." He emphasized the factual dispute about whether defendant showed the children his Charlie Kirk post and whether plaintiff threatened GH, and he asserted that he had an e-mail from the children's school principal dated April 23, 2025, which allegedly proved that defendant blocked him from receiving the sports schedule. Plaintiff stated that he had been able to attend "all the games and things like that," but he contended that defendant either did not post information about the events or often posted the day before. Plaintiff requested an evidentiary hearing to resolve factual disputes and to present evidence of defendant's repeated interference with his access to information. He also asked that the court either interview the children *in camera* or have them speak to the FOC.

Defendant's oral argument was consistent with her written response. Regarding the alleged threat during plaintiff's parenting time, defendant stated that she did not believe that plaintiff intended harm. She characterized plaintiff's "I will Charlie Kirk you" statement as "weird," but she believed that it was intended as a joke. Defendant opposed *in camera* interviews and child testimony, and she requested denial of plaintiff's motion.

Ruling from the bench, the trial court stated that it was familiar with the case, had reviewed the pleadings, and had considered the parties' oral argument. Finding no change of circumstances, the court denied plaintiff's motion for joint legal custody. The court denied modification of parenting time, finding that parenting time was "going well for the children." The court also denied plaintiff's requests for appointment of a GAL and *in camera* interview of the children as not "appropriate" in the present case. This appeal followed.

## II. CUSTODY AND PARENTING TIME

### A. STANDARD OF REVIEW

We affirm all orders and judgments of the circuit court pertaining to a child custody dispute "unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. This principle also applies to orders concerning parenting time. *Barretta v Zhitkov*, 348 Mich App 539, 549; 19 NW3d 420 (2023).

"The great weight of the evidence standard applies to all findings of fact." *Vodvarka v Grasmeyer*, 259 Mich App 499, 507; 675 NW2d 847 (2003) (quotation marks and citation omitted). "An abuse of discretion standard is applied to a trial court's discretionary rulings such as custody decisions." *Id*. at 507-508 (quotation marks and citation omitted). With respect to custody issues, "[a]n abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). "Questions of law are reviewed for clear legal error." *Vodvarka*, 259 Mich App at 508 (quotation marks and citation omitted). "Clear legal error occurs when the trial court incorrectly chooses, interprets, or applies the law." *Brown v Brown*, 332 Mich App 1, 9; 955 NW2d 515 (2020) (quotation marks and citation omitted).

## B. JOINT LEGAL CUSTODY

Plaintiff first contends that the trial court committed clear legal error by denying his motion for joint legal custody without explaining its reasoning, addressing his new allegations, conducting an evidentiary hearing, determining the children's established custodial environment, or considering the statutory best-interest factors under MCL 722.23. We disagree.

The Child Custody Act of 1970, MCL 722.21 *et seq.*, governs the resolution of most custody disputes in Michigan. See *Mauro v Mauro*, 196 Mich App 1, 4; 492 NW2d 758 (1992). The purpose of the Act is to promote the children's best interests and welfare, and courts must construe it liberally to serve that purpose. See MCL 722.26(1). "The standards for changing custody apply equally to physical and legal custody of the children." *Kuebler v Kuebler*, 346 Mich App 633, 668; 13 NW3d 339 (2023).

Plaintiff sought joint legal custody. Joint legal custody occurs when "the parents . . . share decision-making authority as to the important decisions affecting the welfare of the child." MCL 722.26a(7)(b). Important decisions affecting the welfare of a child include medical and educational decisions. *Shulick v Richards*, 273 Mich App 320, 327; 729 NW2d 533 (2006). The question is not whether the parents necessarily get along, but whether the parents can cooperate on important issues affecting the child's welfare. *Id*. at 326-327.

A movant seeking a modification of custody must first show by a preponderance of the evidence that proper cause or a change of circumstances exists that would warrant a custody hearing. *Vodvarka*, 259 Mich App at 508-509, citing MCL 722.27(1)(c). "[P]roper cause means one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Vodvarka*, 259 Mich App at 511. The grounds must be relevant to at least one of the 12 statutory best-interest factors under MCL 722.23 and "must be of such magnitude to have a significant effect on the child's well-being." *Id.* at 512. A "change of circumstances" requires proof that "since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Id.* at 513. Critically, the evidence "must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child." *Id.* Moreover, "the movant cannot rely on facts that existed before entry of the custody order," and the change must have occurred after the last custody order. *Id*. at 514. This threshold requirement exists to "erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders." *Id*. at 509 (quotation marks and citation omitted). When a court determines that the proper-cause or change-of-circumstances threshold is not met, it need not proceed to consideration of the established custodial environment or analysis of the best-interest factors. See *id*.

The trial court's finding that there was "no change of circumstance pled to consider a referral to review the joint legal custody issue" operated as a threshold determination that plaintiff's allegations, even if accepted as true, did not meet the *Vodvarka* standard. The record supports this determination. The trial court did not expressly address proper cause, but to the extent that this was erroneous, we are convinced that the error was harmless. See MCR 2.613(A).

Viewed individually or collectively, plaintiff's allegations about the Charlie Kirk social media post and defendant's alleged interference with plaintiff's access to information about the children do not demonstrate conduct of a magnitude that would "have a significant effect on the child's well-being" so as to constitute proper cause or a change of circumstances sufficient to warrant a reevaluation of legal custody. *Vodvarka*, 259 Mich App at 512, 513. The allegations involved a single, discrete incident in which defendant allegedly showed the children plaintiff's post after the shooting. Even accepting the allegations as true, a single instance of showing children social media posts—although potentially inappropriate—does not constitute the type of sustained pattern of alienating conduct that satisfies the *Vodvarka* threshold. See, e.g., *Martin v Martin*, 331 Mich App 224, 237; 952 NW2d 530 (2020) (affirming the trial court's finding of proper cause because of the mother's continued interference with the father's relationship with the children and obstruction of a court-ordered therapeutic process); *McRoberts v Ferguson*, 322 Mich App 125, 132; 910 NW2d 721 (2017) (affirming the trial court's finding of proper cause because of ongoing visitation complaints, resulting in the mother being found in contempt of the court's visitation order three times, and because of the mother's repeated interference with the child and the father's relationship).

Similarly, the allegations regarding access to academic and extracurricular information do not rise to the magnitude required to establish proper cause or a change of circumstances. Plaintiff's characterization of previously raised allegations about defendant's interference as "relatively very minor issues" that he did not need to address individually supports the conclusion that they were not "of such magnitude [as] to have a significant effect on the child's well-being." *Vodvarka*, 259 Mich App at 514. See also *id*. at 510 (stating that "minor allegations of contempt or visitation complaints" do not satisfy the threshold). Nor does plaintiff indicate how his new allegations involving the principal's April 2025 e-mail and the June 2025 GameChanger removal constituted material changes that significantly affected the children's well-being. These allegations appear to involve scheduling-coordination issues rather than interference with plaintiff's fundamental relationship with his children. Supporting this conclusion is plaintiff's acknowledgment during the motion hearing that he had been able to "go to all the games and things like that."[2]

And contrary to plaintiff's assertion, the trial court's decision to deny plaintiff's motion without holding an evidentiary hearing did not violate his due-process rights. Even if proven through an evidentiary hearing, plaintiff's allegations involved isolated incidents and coordination disputes in the context of a longstanding, stable custody arrangement in which the parties did not dispute that the children demonstrated academic and extracurricular success. Even assuming that

---

[2] Plaintiff asserts in his appellate brief that he alleged in his motion that one child was given a phone on the condition that the child not reveal it to plaintiff. According to plaintiff, the child hid the phone for more than a year and became "visibly distressed upon disclosure." We find no such allegation in plaintiff's written motion, nor was it mentioned during the hearing on the motion. Although this Court reviews unpreserved claims in child custody proceedings under the plain-error standard, *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (Docket No. 368002) (2024); slip op at 7, it can hardly be plain error for a trial court not to identify and consider a fact that a party does not bring to its attention.

-5-

plaintiff's allegations were true, they were not legally sufficient to meet the threshold requirement that a proper cause or change of circumstances existed, so credibility determinations through an evidentiary hearing were unnecessary. See *id*. at 512 ("[T]he court can accept as true the facts allegedly comprising proper cause or a change of circumstances, and then decide if they are legally sufficient to satisfy the standard.").

Nor did the trial court commit clear legal error by denying plaintiff's motion without considering the children's established custodial environment or the statutory best-interest factors. When a court concludes that the threshold showing for revisiting a custody order is not met, the court need not proceed to the determination of established custodial environment or analyze the best-interest factors. *Pennington v Pennington*, 329 Mich App 562, 571; 944 NW2d 131 (2019); *Griffin v Griffin*, 323 Mich App 110, 118-119; 916 NW2d 292 (2018). These detailed findings become necessary only when a court reaches the merits of custody modification after the *Vodvarka* threshold is satisfied. In this case, the trial court's finding that plaintiff failed to establish a change of circumstances under *Vodvarka* reflects proper application of the legal standard to the facts presented. Although the trial court did not expressly address proper cause, the record supports the trial court's legal conclusion that father's allegations did not meet *Vodvarka*'s threshold requirements. Because plaintiff's allegations did not satisfy the *Vodvarka* threshold, the trial court did not err by denying plaintiff's motion for joint legal custody without proceeding to determination of the children's established custodial environment and analysis of the best-interest factors, and the trial court's alleged failure to articulate its reasoning for the denial was harmless error.

Also unavailing is plaintiff's assertion that the trial court committed clear legal error by denying the requested relief on the basis that the issues were "previously resolved," but without identifying the controlling prior order or explaining why the current allegations did not warrant review. Plaintiff cites no authority requiring the trial court to identify the prior order that addressed the issues that plaintiff acknowledged during the motion hearing had previously been addressed. Furthermore, the trial court did not deny plaintiff's motion on the basis that certain issues had previously been resolved. Rather, the trial court stated that it considered the pleadings and oral argument, and it explained that plaintiff's allegations did not warrant further review because they did not meet the *Vodvarka* threshold.

Because plaintiff's allegations did not satisfy the *Vodvarka* threshold, the trial court did not err by denying plaintiff's motion for joint legal custody without findings regarding the children's established custodial environment and the best-interest factors. Although the trial court did not expressly address proper cause, the record supports the trial court's legal conclusion that father's allegations did not meet *Vodvarka*'s threshold requirements, and the trial court accordingly lacked the authority to modify the previous custody order. Therefore, the trial court appropriately denied plaintiff's motion.

## C. PARENTING TIME

Plaintiff also requested a modification of parenting time. Children have the right to have parenting time with their parents. See MCL 722.27a(3). Accordingly, a trial court must order parenting time "in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time." MCL 722.27a(1). If a

requested modification of parenting time will not alter a child's established custodial environment, then a less stringent threshold applies than the one articulated in *Vodvarka*. See *Shade v Wright*, 291 Mich App 17, 26-27; 805 NW2d 1 (2010).

This Court in *Shade* did not specifically define the type of showing necessary to establish proper cause or a change of circumstances involving a request for modified parenting time that did not affect a child's custodial environment. Rather, it determined that the kinds of normal life changes present in that case would not satisfy the *Vodvarka* standard, but they were sufficient to establish a change in circumstances sufficient to revisit parenting time. *Id*. at 29-31. After the decision in *Shade*, trial courts must consider whether the proposed change to parenting time would alter the child's established custodial environment. *Id*. at 27. If the proposed change would alter the established custodial environment, then courts will treat the request as though it were a request to change custody and apply the more stringent threshold stated in *Vodvarka*. See *id*.

The trial court denied plaintiff's request to modify parenting time without determining the children's established custodial environment or whether plaintiff's request for alternate-week parenting time would alter the established custodial environment. The trial court committed clear legal error by failing to follow the procedural steps established in *Shade*. Nevertheless, on the basis of our review of the record, we conclude that the trial court's error was harmless because it had no practical effect on the outcome of plaintiff's motion. See *Barretta*, 348 Mich App at 561; see also MCR 2.613(A). As explained, the trial court did not err by concluding that plaintiff did not meet the stringent threshold stated in *Vodvarka*, so plaintiff's request to modify parenting time fails if his proposed modification would alter the children's established custodial environment.

Even if the modification would not alter the established custodial environment, plaintiff did not identify any normal life changes for the trial court to consider when determining whether to modify parenting time. See *Shade*, 291 Mich App at 30. Plaintiff asserted in his motion that he met *Shade*'s more flexible standard for modifying parenting time because he "is unable to attend activities of the minor children because he is either not told about their existence or that the date/location of the activity changed." However, father directly contradicted this assertion at the hearing on his motion when he stated that he had been able to "go to all the games and things like that." Similarly, he asserted that he had only four overnight visitations a month, but he neglected to consider holidays and summer parenting time. He also stated that the children were "forbidden" from calling him during mother's parenting time, yet he indicated that a trial court order gave him a midweek phone call with the children. Plaintiff has failed to show any change, let alone the normal life changes of the type seen in *Shade*, that would have given the trial court a reason to revisit the parenting-time schedule. Therefore, any procedural error that the trial court committed by failing to apply the *Shade* framework to father's request for a modification of parenting time was harmless.

## III. GUARDIAN AD LITEM

Plaintiff further contends that the trial court abused its discretion by denying his request for a GAL without articulating any reasoning or addressing plaintiff's allegations that the children's well-being was at risk. We disagree.

## A. STANDARD OF REVIEW

Whether to appoint a GAL to is left to the trial court's discretion. See MCL 722.24(2) ("If, at any time in the proceeding, the court determines that the child's best interests are inadequately represented, the court *may* appoint a lawyer-guardian ad litem to represent the child.") (emphasis added). We review a trial court's discretionary decisions for an abuse of discretion. See *Vodvarka*, 259 Mich App at 507.

## B. ANALYSIS

A GAL is an individual whom the trial court appoints to assist the court in determining a child's best interests and who does not have to be a lawyer. MCL 722.22(g). In disputes regarding the custody of a minor child, MCR 3.204(D) provides that "the court may, on motion of a party or on its own initiative, for good cause shown, appoint a guardian ad litem to represent the child . . . ." "Good cause" means "[a] legally sufficient reason." *Black's Law Dictionary* (12th ed).

The trial court simply denied plaintiff's request for a GAL because the request was not "appropriate." MCR 3.204(D) does not require detailed findings explaining the exercise of that discretion. See MCR 2.517(A)(4) ("Findings of fact and conclusions of law are unnecessary in decisions on motions unless findings are required by a particular court rule."). Although the court's statement is brief, the record demonstrates substantial evidence supporting the court's exercise of discretion to deny plaintiff's motion to appoint a GAL.

The trial court's determination that a GAL was "not appropriate" reflected a reasonable conclusion that appointment would not enhance the children's welfare, given that plaintiff's allegations did not satisfy the threshold requirements for a change in custody or modification of parenting time. Although plaintiff declares that defendant's actions put the children's well-being at risk, there is no serious dispute that the children have been in a stable custodial arrangement for more than 10 years, that they are doing well academically and in extracurricular activities, and that plaintiff maintains regular parenting time and involvement in their lives. In light of this, the court could reasonably conclude that the children's interests were being adequately represented and that appointment of a GAL would not materially assist the court. Therefore, the court could reasonably conclude that there was no legally sufficient reason for appointing a GAL. Moreover, the allegations underlying plaintiff's motion involved disputed coordination and communication issues between the parents rather than concerning evidence about the children's well-being. Such disputes reflected parental conflict, not that the children's interests were inadequately represented. For these reasons, we conclude that the trial court did not abuse its discretion by denying plaintiff's request for appointment of a GAL.

## IV. CONCLUSION

The trial court did not err when it denied plaintiff's request for joint legal custody of the children because plaintiff's allegations did not meet the *Vodvarka* threshold required to permit further inquiry into whether the previous custody order should be modified. Regarding plaintiff's request to modify parenting time, the trial court erred by failing to consider the proposed modification's effect on the children's custodial environment, but that error was harmless. Finally,

the trial court's decision not to appoint a GAL was supported by the record and did not constitute an abuse of discretion.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle